UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH DAVIS and
KATHLYN PARKER,

       Plaintiffs,                            Case No. 08-13659

v.                                          Hon. Gerald E. Rosen

MALCOLM PIRNIE, INC.*,*

       Defendant.
_____/

**OPINION AND ORDER REGARDING**
**DEFENDANT'S MOTION TO DISMISS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     March 6, 2009

PRESENT: Honorable Gerald E. Rosen
                  Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiffs Kenneth Davis and Kathlyn Parker commenced this action in this Court on August 22, 2008, alleging that Defendant Malcolm Pirnie, Inc. unlawfully terminated Plaintiff Davis's employment in violation of federal and state law. Plaintiff Davis asserts a federal claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, as well as state-law claims under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201 *et seq.*, Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"), Mich. Comp. Laws § 37.1101 *et seq.*, and Michigan's

2:08-cv-13659-GER-VMM   Doc # 17   Filed 03/06/09   Pg 2 of 15   Pg ID 171

Bullard-Plawecki Employee Right to Know Act, Mich. Comp. Laws § 423.501 *et seq.* Plaintiff Davis also brings a state-law claim of intentional infliction of emotional distress, and his wife, Plaintiff Parker, brings a state-law claim of loss of consortium.

In lieu of answering the complaint, Defendant has filed a motion to dismiss Plaintiffs' state-law claims as time-barred under the relevant Virginia statutes of limitations. In support of this motion, Defendant argues that Michigan's borrowing statute, Mich. Comp. Laws § 600.5861, mandates the application of Virginia's shorter periods of limitation because, in Defendant's view, Plaintiffs' claims accrued in Virginia at a time when Plaintiff Davis was a Virginia resident. In response, Plaintiffs contend that Michigan's statute of limitations, and not Virginia's, should govern here, where they maintain that Plaintiff Davis was a Michigan resident at the time his and his wife's claims accrued.

Defendant's motion has been fully briefed by the parties. Having reviewed the briefs in support of and opposition to this motion, as well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that this motion must be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant's motion rests exclusively upon the allegations of Plaintiffs' complaint. Accordingly, the following recitation of facts derives largely from this source,[1] with

---

[1] Plaintiffs' response to Defendant's motion is accompanied by several exhibits that are intended to support the proposition that Plaintiff Davis remained a Michigan resident at all relevant times. Defendant, in turn, has requested that the Court strike these exhibits (as well as Plaintiffs' underlying response brief), arguing that its motion was brought under Fed. R. Civ. P. 12(b)(6), and that the Court therefore must confine its analysis strictly to the allegations of Plaintiffs' complaint.

Defendant's challenge to these exhibits is not well-taken. It is hardly surprising that Plaintiffs' complaint lacks detailed allegations about Plaintiff Davis's residency. The issue of his Michigan versus Virginia residency, after all, has arisen only as a result of Defendant's appeal to a statute of limitations defense, and Plaintiffs were under no obligation to anticipate and plead around this affirmative defense. *See Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain *any* information about defenses and may not be dismissed for that omission."). Now that Defendant has asserted this defense, however, Plaintiffs need not confine their response to the bare-bones allegations of the complaint bearing upon Plaintiff Davis's residency, but may seek to supplement these allegations with additional information about Plaintiff Davis's whereabouts and intentions in the pertinent time period.

Defendant's complaint about the "unfairness" of this supplementation is utterly nonsensical. As Defendant points out, in the event that the Court elects to consider matters outside the pleadings in resolving Defendant's motion, it must treat the motion "as one for summary judgment under Rule 56" and afford all parties a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). It follows, in Defendant's view, that the Court should be reluctant to consider Plaintiffs' exhibits and decide Defendant's motion under the standards of Rule 56, because Defendant has not yet had an opportunity to conduct discovery and present evidence in opposition to Plaintiffs' submissions. Yet, if Plaintiffs' exhibits purport to raise issues of fact that would warrant the denial of Defendant's motion under Rule 56, it would behoove Defendant either (i) to address and overcome these exhibits by showing, through supporting materials or argument, that there truly are no genuine issues of material fact as to Plaintiff Davis's residency, or (ii) to withdraw its motion and refile it (if warranted) after further exploration of Plaintiff Davis's residency in discovery. Either option, of course, would fully mitigate any "unfairness" to Defendant resulting from Plaintiffs' submission of materials outside the pleadings.

The Court is not aware of any authority (and Defendant has not cited any) that would require it to turn a blind eye to relevant materials bearing upon a question of central importance

Plaintiffs' allegations accepted as true for present purposes and the modest additional record viewed in a light most favorable to Plaintiffs as the non-moving parties.

Plaintiff Kenneth Davis began his employment with Defendant Malcolm Pirnie, Inc. in 1986, working as an engineer. Beginning in 1998 and continuing into 2000, Plaintiff experienced a number of health problems, resulting in his use of "sick time and/or FMLA leave to recuperate" during this period. (Complaint at ¶ 11.)

In the fall of 1999, Plaintiff was relocated by Defendant to Michigan to manage a project with the State of Michigan. As a result of the relocation, Plaintiff Davis and his wife, Plaintiff Kathlyn Parker, purchased and moved into a home located in Howell, Michigan. In addition, Plaintiff Parker obtained a tenure-track position with Eastern Michigan University.

In April of 2003, Plaintiff Davis's project assignment with the State of Michigan was not renewed. Following the conclusion of this project, Defendant sent him to work on temporary assignments in New York and Virginia.[2] Throughout the duration of these

---

to a pending motion and instead decide the question in a vacuum, merely because the case is at an early stage and the parties have not yet had an opportunity to take discovery on this issue. Rather, the proper recourse, in accordance with the Federal Rules and the usual practice of this Court, is either to convert the motion and decide it under the standards of Rule 56 or, more typically, to deny the motion without prejudice and revisit the matter under a complete record at the close of discovery. In this instance, because Defendant's motion turns upon a discrete, threshold issue that may be resolved under a limited set of facts, the Court elects to treat Defendant's motion as seeking summary judgment under Rule 56. Defendant remains free, of course, to revisit the issue of Plaintiff Davis's residency if warranted by additional facts learned in discovery.

[2] More specifically, Plaintiff states in his affidavit that he initially was assigned to work in New York in 2003, and then was sent to work in Virginia in March of 2004.

temporary assignments, however, Plaintiff Davis continued "to maintain his home in Michigan." (Complaint at ¶ 12.)[3]

In 2004, Plaintiff Davis began looking for permanent employment in Michigan. Upon learning of this, Defendant offered Plaintiff Davis "relocation and a permanent position in Virginia in order to retain his services with the company." (Complaint at ¶ 14.)[4] Plaintiff Davis "agreed to relocate to Virginia, but only on the condition that his wife . . . find a university teaching position there." (*Id.* at ¶ 15.) When Plaintiff Parker subsequently identified and accepted such a position at Virginia State University, Plaintiff Davis advised his employer in mid-August of 2005 that he was accepting the offer of relocation and a permanent position in Virginia.[5]

During this same time period in the summer of 2005, however, Plaintiff Davis suffered a recurrence of one of his health condition, "which necessitated another surgery which was scheduled for November 2005." (Complaint at ¶ 16). According to the complaint, when Defendant learned of the recurrence of Plaintiff Davis's health problems

---

[3]According to his affidavit, Plaintiff Davis "returned home frequently" during this period "to be with my wife who continued to reside and work in Michigan," traveling back to Michigan "usually every other weekend [and] for holidays and vacations." (Plaintiffs' Response, Ex. 1, Davis Aff. at ¶¶ 5, 8.) In addition, he states that he paid Michigan taxes during this period, that Defendant directly deposited his paycheck into his Michigan bank account, and that Defendant reimbursed him for "remote living costs" to cover the expenses of an apartment in Virginia, furniture, utilities, and travel to and from Michigan. (*Id.* at ¶¶ 5-6, 8-10.)

[4]Plaintiff Davis states in his affidavit that this offer was made in September of 2004.

[5]More specifically, Plaintiff Davis states in his affidavit that he accepted the company's offer on August 18, 2005, three days after his wife had received her job offer.

and his potential need for medical leave, the company notified him on August 26, 2005 "that a business decision had been made to terminate him because it was too expensive to continue to employ him." (*Id.* at ¶ 19.) Plaintiff Davis's last date of employment with Defendant was November 30, 2005,[6] and he alleges that his "job responsibilities were assumed by a much younger man in his 30s." (*Id.* at ¶¶ 20-21.)

### III.  ANALYSIS

**A.     The Standards Governing Defendant's Motion**

Defendant's motion seeks the dismissal of Plaintiffs' state-law claims under Fed. R. Civ. P. 12(b)(6). As noted earlier, however, Plaintiffs' response to this motion is accompanied by materials outside the pleadings, and the Court has elected to consider these materials as shedding at least some additional light on the issues presented in Defendant's motion. Accordingly, the Court will treat this motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Under Rule 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the moving party bears the burden of proof on an issue — as is the case here, where Defendant is appealing to a statute of limitations defense — its

---

[6]Plaintiff Davis has provided a copy of his final paycheck from Defendant, which is dated December 2, 2005 and was sent to Plaintiffs' home in Howell, Michigan. (*See* Plaintiffs' Response, Ex. 5.)

"showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted); *see also Dresser v. Cradle of Hope Adoption Center, Inc.,* 358 F. Supp.2d 620, 631 (E.D. Mich. 2005). Moreover, in resolving Defendant's motion, the Court must "view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party, and summary judgment in favor of the party with the burden of persuasion is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Arnett v. Myers,* 281 F.3d 552, 561 (6th Cir. 2002) (internal quotation marks, citation, and alterations omitted).

**B.     Plaintiffs' State-Law Claims Were Timely Brought Within the Three-Year Limit Set Forth in the Applicable Michigan Statute of Limitations.**

Defendant's sole argument for the dismissal of Plaintiffs' state-law claims is that the claims are time-barred. Specifically, Defendant contends that under Michigan's borrowing statute, Mich. Comp. Laws § 600.5861, the timeliness of Plaintiffs' claims should be determined by reference to the relevant one-year and two-year Virginia statutes of limitations governing these types of claims, and not Michigan's more generous three-year statute of limitations. The Court cannot agree.

As both sides recognize, the determination whether to apply Virginia's or Michigan's statute of limitations in this case is governed by Michigan's borrowing statute, which provides in pertinent part:

> An action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply.

Mich. Comp. Laws § 600.5861. Plaintiff Davis concedes that his claims accrued in Virginia, (*see* Plaintiffs' Response Br. at 7), thereby triggering the borrowing statute. Thus, the disposition of the present motion turns upon Plaintiff Davis's residency at the time of this accrual. If, as Plaintiffs contend, he was a Michigan resident at the time, the plain language of the "except" clause of the borrowing statute calls for the application of Michigan's statute of limitations. *See Johnson v. Ventra Group, Inc.,* 191 F.3d 732, 746 (6th Cir. 1999) (construing the borrowing statute as "provid[ing] that a cause of action that accrues outside of the state in favor of a Michigan resident is governed by Michigan's statute of limitations").

The law is well established that an individual has only one legal residence, *see People v. Williams,* 226 Mich. App. 568, 576 N.W.2d 390, 392 (1997),[7] and that, once such a residence is established, it remains until supplanted by a new legal residence, *see Beecher v. Common Council of Detroit,* 114 Mich. 228, 72 N.W. 206, 207 (1897); *Wisconsin Potowatomies of Hannahville Indian Community v. Houston,* 393 F. Supp. 719, 732 (W.D. Mich. 1973). Under Michigan law, an individual's legal residence is composed of two elements, physical presence and intent to remain indefinitely, which

---

[7] Both sides rely exclusively on Michigan law as governing the question of Plaintiff Davis's residency, and the Court will do likewise.

must coincide in time. *See Reaume & Silloway, Inc. v. Tetzlaff,* 315 Mich. 95, 23 N.W.2d 219, 221 (1946); *Wisconsin Potowatomies,* 393 F. Supp. at 732.

Applying these principles here, it is clear that from the fall of 1999 to the spring of 2003, Plaintiff Davis was a Michigan resident. He worked in Michigan throughout this time, he and his wife purchased and moved into a home in this state, and his wife obtained a tenure-track position with a Michigan university. Presumably, if the project Plaintiff Davis was working on at the time had been renewed, he would have remained employed in Michigan throughout the remainder of 2003 and thereafter.

This project was not renewed, however, and Plaintiff Davis was instead sent to work on temporary assignments in New York and Virginia. Nonetheless, the complaint alleges that throughout this period — spanning the latter part of 2003, all of 2004, and the first portion of 2005 — Plaintiff Davis continued "to maintain his home in Michigan." (Complaint at ¶ 12.) Moreover, there is nothing in the record that evidences his intent during this period to relinquish his Michigan residency. To the contrary, the evidence indicates that Plaintiff Davis returned frequently to his Michigan home, that his wife continued to reside and work in this state, and that he paid Michigan taxes and maintained a Michigan bank account into which Defendant directly deposited his paychecks. In addition, Plaintiff Davis began searching for permanent Michigan employment during this time frame, presumably out of a desire to work near his Michigan home and his wife, a Michigan resident. Thus, while he spent a significant amount of time outside the state in 2003, 2004, and the first part of 2005, he did not relinquish his Michigan residency during

9

this period. *See Leader v. Leader,* 73 Mich. App. 276, 251 N.W.2d 288, 290 (1977) (recognizing that "[t]oday in our mobile society[,] physical presence for a longer period of time is no longer the key factor it once was" (footnote omitted)).

In Defendant's view, however, matters changed in August of 2005, when Plaintiff Davis accepted his employer's offer of relocation and a permanent position in Virginia. This offer had been extended some time earlier but, according to the complaint, Plaintiff Davis indicated that his willingness to relocate was contingent upon his wife's success in finding a teaching position in Virginia. (Complaint at ¶ 15.) When she eventually secured such a position, Plaintiff Davis advised Defendant in mid-August of 2005 that he had decided to accept the company's offer of permanent Virginia employment. Defendant argues that this confluence of Plaintiff Davis's pre-existing physical presence in Virginia (as a result of his temporary work assignment) and his agreement to permanently relocate to that state operated to extinguish his Michigan residency and transform him into a Virginia resident.

The question is a close one. On one hand, Plaintiff Davis seemingly has acknowledged his intent in mid-August of 2005 to relocate to Virginia, as both he and his wife evidently had secured permanent employment in that state. The Michigan courts have recognized that even a brief confluence of physical presence and intent to permanently remain can suffice to establish residency. *See, e.g., Beecher,* 72 N.W. at 207 ("If the intention of permanently residing in a place exists, a residence, in pursuance of that intention, however short, will establish a domicile."); *Williams v. State Farm Mutual*

10

*Automobile Ins. Co.,* 202 Mich. App. 491, 509 N.W.2d 821, 822-23 (1993) (finding that the plaintiff had established Michigan residency for purposes of obtaining insurance benefits where he had "informed his parents that he was moving back to Michigan" and had "quit his job [in Nevada], closed his bank account in Nevada and opened another one in Michigan, relinquished his apartment, forwarded his mail to his parents' address in Michigan, and loaded his personal belongings in his truck," but was injured in an automobile accident in Oklahoma while traveling from Nevada to Michigan).

On the other hand, any such intent by Plaintiff Davis to relocate to Virginia was exceedingly short-lived, spanning only the eight-day period from August 18, 2005 (when he accepted Defendant's offer of permanent Virginia employment) until August 26, 2005 (when he was notified of the company's decision to terminate his employment). Upon learning of Defendant's decision, Plaintiff Davis evidently abandoned any intention to make Virginia his permanent home, with he and his wife instead remaining in their existing Michigan home and his wife rescinding her acceptance of the Virginia teaching position and retaining her Michigan employment. So far as the record reveals, Plaintiffs took no concrete steps in the brief period between August 18 and August 26, 2005 to relinquish their Michigan ties and put down permanent roots in Virginia — they made no apparent effort, for example, to sell their Michigan home, purchase a permanent Virginia residence where they both would live, move their possessions, establish a Virginia bank account, or the like. The courts have placed significance on such tangible acts (or the lack thereof) as evidence of an intent (or a lack of intent) to abandon residency in one

11

state and permanently relocate to another. *See, e.g., Stacey v. ZF Lemforder,* No. 05-72777, 2007 WL 439045, at *3-*4 (E.D. Mich. Feb. 6, 2007); *Edick v. Poznanski,* 6 F. Supp.2d 666, 669-70 (W.D. Mich. 1998); *see also Wisconsin Potowatomies,* 393 F. Supp. at 732 (reasoning that "[e]ven if [the party in that case] had intended to abandon her former domicile . . . , she had not done so because she had not established a new one"). Under the record presented here, the Court would be reluctant to conclude that Plaintiff Davis relinquished his Michigan residency and became a Virginia resident solely upon forming the state of mind, unaccompanied by any tangible measures, that he and his wife had found permanent Virginia employment and thus would commence the process of relocating to that state.

Fortunately, there is no need to decide whether Plaintiff Davis's acceptance of Defendant's fleeting offer of permanent Virginia employment served to transform him into a Virginia resident for a few days in August of 2005, or whether he remained a Michigan resident throughout this period. As the plain language of Michigan's borrowing statute makes clear, the key point in time for ascertaining a plaintiff's residency is the point at which the plaintiff's ***"cause of action accrued."*** Mich. Comp. Laws § 600.5861 (emphasis added). Against this statutory backdrop, Defendant's focus upon Plaintiff Davis's intent in mid-August of 2005 is misplaced, because his state-law causes of action did not accrue at that time. Rather, as emphasized by the Michigan Supreme Court, "a claim for discriminatory discharge cannot arise until a claimant has been discharged." *Collins v. Comerica Bank,* 468 Mich. 628, 664 N.W.2d 713, 716

(2003). Consequently, while Plaintiff allegedly was *informed* on August 26, 2005 of Defendant's decision to terminate his employment, his state-law wrongful discharge claims under the ELCRA and PDCRA did not accrue until he actually was *discharged* — *i.e.,* on November 30, 2005, his last date of employment. *See Collins,* 664 N.W.2d at 716; *Parker v. Cadillac Gage Textron, Inc.,* 214 Mich. App. 288, 542 N.W.2d 365, 366 (1995) (holding under the circumstances of that case that "[t]he last day worked [w]as the date of discharge," and thus was the date that the plaintiffs' claims of discriminatory discharge accrued); *see also Wilkerson v. University of Michigan,* No. 265220, 2006 WL 2061397, at *4 (Mich. Ct. App. July 26, 2006) (explaining that *Parker'*s "last day worked" rule of accrual applies where a plaintiff is informed of a discharge decision "ahead of time" but then continues to work until a later discharge date).[8]

Whatever question there might be about Plaintiff Davis's residency for the brief period in mid-August of 2005 between his acceptance of Defendant's offer of permanent employment and his discovery that Defendant had decided to discharge him, there is no such doubt about his residency when he actually was discharged on November 30, 2005.

---

[8]Similarly, Plaintiff Davis's state-law claim of intentional infliction of emotional distress accrued upon his discharge, as the allegations in support of this claim identify his termination as the act that inflicted the emotional distress. (*See* Complaint at ¶ 49.) As to Plaintiff Davis's final state-law claim, arising from alleged violations of the Bullard-Plawecki Employee Right to Know Act, Mich. Comp. Laws § 423.501 *et seq.,* the complaint does not specify when these violations might have occurred, beyond alleging that Plaintiff Davis submitted written requests to review his personnel file "on two different occasions." (Complaint at ¶ 46.) In support of the present motion, Defendant has not endeavored to show that these requests were made during the brief period in mid-August of 2005 when Plaintiff Davis arguably might have qualified as a Virginia resident.

By that time, any fleeting intent to relocate permanently to Virginia surely had been abandoned, and Plaintiff Davis presumably had decided to retain — or, at a minimum, revert to — his Michigan residency.  During this period between late August and November of 2005, moreover, Plaintiff Davis presumably continued his usual practice of regularly traveling back to his Michigan home, and Defendant evidently continued to deposit his paychecks — including his last paycheck dated December 2, 2005, (*see* Plaintiffs' Response, Ex. 5) — into his Michigan bank account.  Viewing the record most favorably to Plaintiffs, then, Plaintiff Davis was a Michigan resident on the date of his discharge.

Because Plaintiff Davis's state-law claims accrued on the date of his discharge, and not when he was informed of Defendant's decision to terminate his employment, Michigan's borrowing statute dictates that the relevant Michigan statutes of limitations should govern the state-law claims brought by this Michigan resident.  Plaintiffs point out, and Defendant does not dispute, that the same three-year statute of limitations, Mich. Comp. Laws § 600.5805(10), applies to each of Plaintiffs' state-law claims.  Because Plaintiffs commenced the present suit within a three-year period after Plaintiff Davis's discharge on November 30, 2005, Plaintiffs' state-law claims are not time-barred.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's October 8, 2008 motion to dismiss (docket #9) and its October 10, 2008 amended motion to dismiss

(docket #10) are DENIED. IT IS FURTHER ORDERED that Defendant's November 7, 2008 motion to strike Plaintiffs' response (docket #12) also is DENIED.

                                                  s/Gerald E. Rosen
                                                  Chief Judge, United States District Court

Dated: March 6, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 6, 2009, by electronic and/or ordinary mail.

                                                  s/LaShawn R. Saulsberry
                                                  Case Manager